## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Continental Casualty Company,
*other* The Markley Group,

           **Plaintiff,**                              **Case No. 2:20-cv-4880**

       **v.**                                          **Judge Michael H. Watson**

Vertiv Services, Inc. *now known as*                   **Magistrate Judge Deavers**
Vertiv Corporation, *et al.*,

           **Defendants.**

### OPINION AND ORDER

There are four motions for summary judgment before the Court: (1) Vertiv

Services, Inc.'s ("Vertiv") motion for partial summary judgment on some of

Continental Casualty Company's ("Plaintiff") claims, ECF No. 88; (2) Vertiv's

motion for partial summary judgment on some of its crossclaims against SBE,

Inc. ("SBE") and Advanced Power Conversion Solution ("Advanced"), ECF No.

89; (3) SBE's and SB Electronics' ("SB," collective with SBE, "SBEs") motion for

summary judgment on Vertiv's crossclaims and Plaintiff's claims against SBE,

ECF No. 91; and (4) Advanced's motion for summary judgment on Vertiv's

crossclaims and Plaintiff's claims against Advanced, ECF No. 92.  For the

following reasons, Vertiv's motion against Plaintiff is **GRANTED IN PART AND**

**DENIED IN PART**; Vertiv's motion against SBE and Advanced is **GRANTED IN**

**PART AND DENIED IN PART;** SBEs' motion is **GRANTED IN PART AND**

**DENIED IN PART**; and Advanced's motion is **GRANTED**.

## I. FACTS

Additional details will be provided in the analysis section, but an overview of the facts is as follows.

Plaintiff insured The Markley Group ("Markley"). LaVallie Rule 30(b)(6) Dep. 10:6–10, ECF No. 87-7. Markley provides "real estate, power, and cooling" for its customers' computers. Montanaro Indv. Dep. 7:16–23, ECF No. 87-1. In December 2017, Markley bought an uninterrupted power supply system (the "System") from Vertiv. Purchase Order, ECF No. 103-1. SBE manufactured a capacitor as one of the component parts (the "Part") of the System. Beale Rule 30(b)(6) Dep. 7:10–24, ECF No. 87-6.

In June 2018, the System failed. Root Cause Analysis 4, ECF No. 103-4. This failure caused a "thermal event," the heat from which triggered the fire-prevention system. *Id.* The water from the fire-prevention system damaged Markley's facility. Montanaro Rule 30(b)(6) Dep. 38:6–24, ECF No. 87-2. Plaintiff paid Markley for the damage. Amend. Compl. ¶ 32, ECF No. 37,

Plaintiff thereafter sued Vertiv, SBE, SB Electronics, and Advanced (SBEs' alleged successor), asserting various claims including negligence and products liability. *See generally*, Amend. Compl., ECF No. 37. Vertiv asserts cross claims against SBE, SB Electronics, and Advanced for, among other things, indemnification and breach of contract. *See generally*, Amend. Cross Compl., ECF No. 66.

## II.     STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a): "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Court must grant summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and "on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986).  The Court disregards "all evidence favorable to the moving party that the jury would not be required to believe."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).  Summary judgment will "not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248 (internal citations and quotation marks omitted).

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  The Court may rely on the parties to call attention to the specific portions of the record that demonstrate a genuine issue of material fact.  *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

The parties have cross-moved for summary judgment.  In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party."  *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citation omitted).  "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record," nor may a district court "treat the case as if it was submitted for final resolution on a stipulated record."  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (internal quotation marks and citation omitted).  The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation.  *Id*.

### III.    ANALYSIS

Plaintiff asserts multiple claims against Defendants, and Vertiv asserts multiple crossclaims against SBE and Advanced.  The Court addresses each claim, in turn.

## A.    Plaintiff's Claims against SBEs and Advanced

Plaintiff asserts the following claims against SBEs and Advanced:

(1) negligence;[1] (2) breach of warranty; and (3) product liability.  Amend. Compl.

¶¶ 59–73, ECF No. 37.  SBEs move for summary judgment on all claims.[2]  Mots.,

ECF Nos. 91.

### 1.    Negligence

The negligence claim is abrogated by the Ohio Products Liability Act

("OPLA").  The OPLA abrogates all common-law products liability claims.  *Perry*

*v. Ethicon, Inc.*, No. 2:20-CV-6592, 2022 WL 912214, at *3 (S.D. Ohio Mar. 29,

2022).  The OPLA defines a product liability claim as a "claim or cause of action

. . . that seeks to recover compensatory damages from a manufacturer or

supplier for . . . physical injury to [a] person" arising from defective design,

defective warning or instruction, defective manufacture or failure to conform with

any relevant representation or warranty.  Ohio Rev. Code § 2307.71(A)(13)(a)–

(c).  A common-law claim is a "product liability claim"—and, therefore, is

---

[1] Plaintiff's response to SBEs' motion for summary judgment suggests that Plaintiff believes it is asserting a negligent misrepresentation claim against SBEs and Advanced.  Resp. 6, ECF No. 104.  The Amended Complaint contains no such claim.  Amend. Compl. ¶¶ 59–73, ECF No. 37.  Even if Plaintiff had properly asserted such a claim, it would fail as abrogated by the OPLA.  *See Hendricks v. Pharmacia Corp.*, No. 2:12-CV-00613, 2014 WL 2515478, at *4 (S.D. Ohio June 4, 2014), *report and recommendation adopted*, No. 2:12-CV-613, 2014 WL 4961550 (S.D. Ohio Oct. 2, 2014) (explaining that negligent misrepresentation claims based on allegedly defective products are abrogated by the OPLA).
[2] Advanced also moves for summary judgment on Plaintiff's claims against it.  ECF No. 92.  As explained below, Advanced is not subject to successor liability and, therefore, no claims can proceed against it.

abrogated the OPLA—when "the actionable conduct that forms the basis of that claim is the same conduct that the OPLA defines as giving rise to a 'product liability claim.'" *Perry*, 2022 WL 912214, at *3.

Here, Plaintiff's negligence claim against SBEs and Advanced asserts that SBEs and Advanced negligently failed to manufacture the Part to be free of defects. *See* Amend. Compl. ¶¶ 59–62, ECF No. 37. As a result, "the actionable conduct that forms the basis" of Plaintiff's negligence claim "is the same conduct that the OPLA defines as giving rise to a 'product liability claim.'" *Perry*, 2022 WL 912214, at *3. Accordingly, the negligence claim is abrogated by the OPLA. *See McManus v. Smith & Nephew, Inc.*, No. 3:19-CV-066, 2020 WL 127702, at *3 (S.D. Ohio Jan. 10, 2020) (holding, when ruling on a motion to dismiss, that the plaintiff's Ohio common law negligence claim was abrogated by the OPLA). Therefore, SBEs are entitled to summary judgment on the negligence claim.

### 2. Breach of Warranty

Generally, breach of warranty claims are also abrogated by the OPLA. *Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 923 (N.D. Ohio 2009) (explaining that because the plaintiff's common law breach of warranty claim was "based upon allegations that a product . . . failed to conform to relevant warranties," the claim was preempted by the OPLA). However, a plaintiff may advance a breach of warranty claim under the UCC at the same time as an OPLA claim. *Id.* at 924–25.

To prevail on a claim for breach of warranty under the UCC, a plaintiff must show:

(1) the existence of a warranty; (2) the product failed to perform as warranted; (3) the plaintiff provided the defendant with reasonable notice of the defect; and (4) the plaintiff suffered an injury as a result of the defect.

*McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 753 (N.D. Ohio 2010).

Plaintiff's response to SBEs does not indicate that it is pursuing such a UCC claim. However, to the extent Plaintiff asserts such a claim, it fails because Plaintiff points the Court to no evidence that the warranty exists. Instead, Plaintiff merely alleges that the Part was not "safe" or "fit for its intended purpose." Amend. Compl. ¶ 64, ECF No. 37. In Plaintiff's response, it does not address whether a warranty existed and, if so, what that warranty encompassed. *See generally*, Resp., ECF No. 104.

Accordingly, Plaintiff has presented no evidence that a warranty exists. As a result, SBEs are entitled to summary judgment on Plaintiff's breach of warranty claim against them.

### 3. Products Liability

From the Complaint, it is difficult to discern what type of OPLA claim Plaintiff asserts. In any event, SBEs is not liable to Plaintiff for any type of OPLA claim because of the component parts doctrine.

Under the component parts doctrine, manufacturers of component parts are "not liable for a defect in a completed product unless: (1) the component itself is defective or dangerous"; or "(2) the component manufacturer constructs or assembles the completed product or substantially participated in the design of

the final completed product." *Ace Am. Ins. Co. v. Gerling & Assocs., Inc.*, 630 F. Supp. 3d 919, 930 (S.D. Ohio 2022) (quotation marks and citation omitted).

Start with the first option—whether the component itself is dangerous or defective. If a component part fails or becomes defective only after it is integrated into the final product, the component part manufacturer cannot be held liable on an OPLA claim. *Romans v. Texas Instruments, Inc.*, No. CA2013-04-012, 2013 WL 6094299, at *6 (Ohio Ct. App., Nov. 18, 2013).

For example, in *Romans*, the plaintiff asserted OPLA claims based on an allegedly defective brake system in his vehicle that could case spontaneous fires. *Id.* at *1. The plaintiff attempted to assert an OPLA claim against the manufacturer of one of the component parts of the brake system. *Id.* The evidence demonstrated that the spontaneous fires could occur only after the component part was integrated into the vehicle, not when the part existed outside the vehicle. *Id.* at * 6. Thus, the *Romans* court concluded that "only after [the component part] was integrated into the [vehicle] did it become defective." *Id.* As a result, that component part was not itself dangerous. *Id.* at *6–11.

Here, Plaintiff has not established that the Part *itself* was defective. As in *Romans*, if the Part was defective at all, it became so only after it was integrated into the System. In the Amended Complaint, Plaintiff does not allege that the Part was defective on its own or that it would have been defective or dangerous in a different system. *See* Amend. Compl. ¶¶ 67–73, ECF No. 37. Plaintiff alleges only that the Part was "not properly rated" for the System so that once the

Part was incorporated in the System, the System became unreasonably dangerous. *Id.* Plaintiff's response in opposition to summary judgment echoes that assertion. *See generally*, Resp., ECF No. 104. Therein, Plaintiff points to its expert's opinions that SBEs "did not identify the risk of applying" the Part to the System and that the Part was not "properly rated" for the System. *Id.* at 4 (citing Mullin Report 6, ECF No. 104-6). In other words, Plaintiff does not argue that the Part was defective on its own. Instead, Plaintiff argues that "only after [the Part] was integrated into the [System] did it become defective." *Romans*, 2013 WL 6094299, at *6; *see also Zager v. Johnson Controls, Inc.*, 18 N.E.3d 533, 541 (Ohio Ct. App. Sept. 15, 2014) (explaining that "it was only it was only once [the component part] was integrated into the [final product] that it potentially became dangerous" and holding that "as the defect complained of only arises in the completed product, we find the component parts doctrine indeed applies to the present case."). Accordingly, the Part is not itself dangerous or defective.

Next, consider whether SBEs substantially participated in the design or assembly of the System. Under the "substantial participation" exception to the component parts doctrine, "a component manufacturer's liability depends upon the manufacturer's involvement and level of input in the design and assembly of the final product." *Zager*, 18 N.E.3d at 547. Thus, if "there is evidence that the component part manufacturer played a direct role in designing the final product and installing and integrating its component into the final product," the "manufacturer may be held strictly liable for the defect in the final product." *Id.*

(citing cases). In contrast, if the "component manufacturer merely consults with the assembler or manufacturer of the final product," that is "insufficient to impose liability on the component part manufacturer." *Romans*, 2013 WL 6094299, at *11.

Here, SBEs did not "substantially participate in the design and assembly of the System. Vertiv provided SBEs with the exact specifications for the Part. Beale I, 43:7–21, ECF No. 90-1. A Vertiv engineer oversaw the design team that developed the type of capacitor. *Id.* at 19:19–22:18. This is insufficient to meet the "substantial participation" exception. SBEs may have been involved in some of the discussions and development of the *Part*, but there is no evidence that SBEs were involved in developing the *System*. *Zager*, 18 N.E.3d at 547–48 (explaining that the "substantial participation" exception may apply when the manufacturer helps design the "final product"); *Romans*, 2013 WL 6094299, at *13 ("Ohio law requires the component manufacturer substantially participate in the design of the *final product*, not the component part in order to be held liable" (citation omitted; emphasis in original)). Accordingly, SBEs did not "substantially participate" in the design or assembly of the System.

Because there is no genuine issue of material fact that the Part was not itself defective or that SBEs did not "substantially participate" in the design or

assembly of the System, the component parts doctrine shields SBEs from liability on the OPLA claims.[3]

## B. Plaintiff's Claims against Vertiv

Plaintiff asserts the following claims against Vertiv: (1) negligence; (2) breach of warranty; (3) breach of contract; (4) product liability; and (5) negligent misrepresentation. Amend. Compl. ¶¶ 33–58, ECF No. 37. Vertiv moves for summary judgment on all but the product liability claim. Mot., ECF No. 88. Vertiv also moves for partial summary judgment on what remedies are available to Plaintiff. *Id.*

### 1. Negligence and Negligent Misrepresentation

For the reasons explained in Part III.A.1., supra, Plaintiff's negligence and negligent misrepresentation claims are abrogated by the OPLA. *See Hendricks*, 2014 WL 2515478, at *4 (explaining that negligent misrepresentation claims based on allegedly defective products are abrogated by the OPLA); *McManus*, 2020 WL 127702, at *3 (same for negligence claims). Accordingly, Vertiv is granted summary judgment on those claims.

---

[3] Vertiv argues that "it is not possible for SBE[s] to prevail on summary judgment on Plaintiff's claims . . . unless Vertiv is also entitled to summary judgment." Mot. 2, ECF No. 101. Vertiv also argues that because it did not move for summary judgment on the product liability claims, the Court cannot grant summary judgment in SBEs' favor on the product liability claims against SBEs. The Court disagrees. There is nothing legally or logically inconsistent about granting summary judgment to SBEs under the component parts doctrine, and a jury finding Vertiv liable for the product liability claims. Indeed, (assuming there is liability at all), that would often be the result of the component part doctrine: the component parts manufacture is protected by the doctrine, but the finished product's manufacturer is liable.

### 2. Breach of Contract and Breach of Warranty

Plaintiff's breach of contract claim is merely a re-packaging of the breach of warranty claim. That is, Plaintiff alleges that Vertiv breached the parties' contract because the System did not perform as promised. Amend. Compl. ¶¶ 39–40, ECF No. 37. Thus, the breach of contract claim is duplicative of the breach of warranty claim.

As explained above, breach of warranty claims are generally preempted by the OPLA, but a plaintiff may advance a breach of warranty claim under the UCC at the same time as an OPLA claim. *Miles*, 612 F. Supp. 2d at 923. Here, however, Plaintiff does not appear to bring such a claim: the Amended Complaint does not reference the UCC, and Plaintiff's response to Vertiv's motion does not indicate that Plaintiff pursues its breach of warranty claim under the UCC. Moreover, a comparison of Plaintiff's allegations for the breach of contract and breach of warranty claims with the products liability claim shows that they are duplicative. Amend. Compl. ¶¶ 36–51, ECF No. 37. In all three claims, Plaintiff essentially alleges that Vertiv warranted that the System would be free from defects and that, by providing a defective System, Vertiv breached that warranty or contract or violated the OPLA. *Id*.

At bottom, the breach of warranty and breach of contract claims cannot succeed, either because they are preempted by the OPLA or because they are

duplicative of the OPLA claims. As a result, Vertiv is entitled to summary judgment on these claims.[4]

### 3. Products Liability

No party has moved for summary judgment on Plaintiff's product liability claims against Vertiv. These claims thus proceed to trial.

### 4. Limitation of Remedies

Vertiv moves for summary judgment on whether Vertiv's and Plaintiff's December 2017 contract (the "Contract") limits Plaintiff's available remedies. ECF No. 88.

Although styled as a motion for summary judgment, Vertiv's motion is more of a motion for reconsideration of the Court's Opinion and Order on Vertiv's motion for judgment on the pleadings (the "O&O"). In Vertiv's motion for judgment on the pleadings, Vertiv argued that the Contract limits the remedies available to Plaintiff. Mot., ECF No. 42. In the O&O, the Court first considered whether the Contract was a contract for the sale of goods or for services (the "predominant purpose test"). O&O 4–9, ECF No. 55. The Court concluded the Contract was for the sale of goods. *Id.* at 9. The Court then considered whether the limitation-of-remedies clause (the "Clause") fails its essential purpose. *Id.* at 9–11. The Court explained that "whether an exclusive remedy provision in a

---

[4] Vertiv also argues that a contractual provision precludes Plaintiff's breach of contract and breach of warranty claims. Mot. 25–27, ECF No. 88. As explained above, Plaintiff's breach of contract and breach of warranty claims fail for other reasons Therefore, the Court need not address this argument.

Case No. 2:20-cv-4880                                          Page 13 of 29

limited warranty has failed of its essential purpose is a question of fact," and, therefore, it is generally inappropriate to rule on the issue on a motion for judgment on the pleadings. *Id*. at 10.

Vertiv now argues that the Contract was not for the sale of goods, but for services. Vertiv does not meaningfully address the O&O's holding that the Contract is one for the sale of goods; instead, Vertiv frames the holding as a "suggestion." *Id*. at 15. The Court construes Vertiv's motion as proceeding under Federal Rule of Civil Procedure 54(b).

Under Federal Rule of Civil Procedure 54(b), courts may reconsider an interlocutory order at any time before entry of final judgment. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Reconsideration of an interlocutory order is appropriate where there is: "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (internal quotation marks and citations omitted). Motions for reconsideration are "not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier." *Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*, No. 2:18-CV-735, 2022 WL 1166231, at *1 (S.D. Ohio Apr. 20, 2022) (internal citations marks and citations omitted).

Vertiv does not meet the demanding standard to warrant reconsideration; indeed, Vertiv does not even address that standard. Read generously, Vertiv

argues reconsideration is warranted because of "new evidence" uncovered in discovery. *Id.* However, as the Court outlined in the O&O, all but one of the factors for consideration in the predominant purpose test rely on only the language of the Contract and the nature of the claims in the complaint. O&O 5–6, ECF No. 55 (citing cases). Evidence is unnecessary for those considerations and, therefore, Vertiv's "new evidence" does not change the Court's prior analysis of those factors.

The only factor that does not rely on the language of the Contract or nature of the claims brought is the "nature of the business of the supplier or seller." *Id.* at 5. Even assuming the Court found Vertiv's "new evidence" on that factor persuasive and decided that factor weighed in Vertiv's favor, that would not change the outcome. In the O&O, the Court concluded that all factors weighed in favor of the Contract being for the sale of goods. *Id.* at 5–9. Even if the "business of the supplier" factor now weighed in Vertiv's favor, that would not outweigh the other factors. In sum, even if the Court concluded that Vertiv's "new evidence" warranted reconsideration, the Court would still hold that the Contract is for the sale of goods.

Vertiv argues against this conclusion by insisting that consideration of an earlier contract (the "April Contract") would have changed the Court's view of the analysis and that the Court did not know about the April Contract at the time of the O&O. Reply, ECF No. 108. However, in the O&O, the Court reasonably relied on the contracts to which Vertiv cited, which did not include the April

Contract. *See* O&O, ECF No. 55; Mot. 3–4, ECF No. 42. Of course, the Court recognizes that it decided the O&O on grounds other than the ones Vertiv raised. That said, Vertiv presented the Court with what it viewed as the relevant agreements for interpreting the limitation-of-liabilities clause, and the Court took Vertiv at its word. That Vertiv *now* believes the April Contract is relevant for interpreting the Clause is not the sort of "new evidence" that warrants reconsideration. *Cf. Premier Dealer Servs., Inc.*, 2022 WL 1166231, at *2 (observing, in an untimely motion to reconsider summary judgment that the defendants' "new legal theories and newly discovered (yet already available) evidence is not a proper basis for reconsideration").

Moreover, even if the Court considered the April Contract, the April Contract would not move the needle. The predominant purpose test focuses on the language of the *at issue* contract. *See* O&O at 5–6, ECF No. 55 (citing cases). Vertiv does not now argue that the April Contract was *itself* the operative contract; instead, Vertiv argues that the April Contract "provides context" for the Contract. *E.g.*, Reply 3, ECF No. 108. As the Court explained, the Contract contains an integration clause expressly stating that the Contract supersedes all prior communications between the parties. O&O at 3–4, ECF NO. 55 (citing the Contract). As the Contract post-dates the April Contract, the Contract supersedes the April Contract and, therefore, whatever "context" the April Contract provides is, at best, minimally helpful.

In short, Vertiv has not shown that reconsideration is warranted.

Whether the Clause is enforceable, however, cannot be determined at this junction. As the Court observed, "[w]hether an exclusive-remedy provision in a limited warranty has failed of its essential purpose is a question of fact." *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 614 (N.D. Ohio 2016)(citing cases). Plaintiff briefly argues that there is no genuine issue of material fact remaining, but the Court disagrees. One of the questions of fact that must be resolved before determining whether the Contract fails its essential purpose is whether the System had a "latent defect." *Id.* (citation omitted). Whether the System had any defect—latent or not—is the jury question at the heart of Plaintiff's product liability claims against Vertiv. Accordingly, whether the Clause fails its essential purpose cannot be resolved now. Vertiv's Cross Claims against SBE and Advanced

As an initial matter, the amended cross-complaint lacks clarity. Vertiv appears to assert two separate cross complaints against SBE, without indicating which Cross Complaint is operative. *See* Amend. Cross Compl. at 14, 21, ECF No. 66. Read generously, Vertiv asserts the following claims: (1) contractual indemnification against SBE and Advanced; (2) statutory contribution against SBE and Advanced; (3) breach of contract against SBE and Advanced; and (4) breach of warranty against SBE.[5] *See generally, id.*

---

[5] Several of these "claims" are more appropriately considered a remedy, rather than a cause of action. However, that distinction is irrelevant for this Opinion, and the Court will refer to all of the above as "claims."

Vertiv asserts that SBE sold Vertiv the Part pursuant to a 2017 Master Agreement (the "2017 Agreement").  Mot., ECF No. 89.  According to Vertiv, the 2017 Agreement includes an indemnification clause under which SBE must cover Vertiv's litigation costs and other losses in certain situations.  *Id.*  Vertiv also asserts that the 2017 Agreement contained other provisions and warranties that SBE allegedly breached.  *See generally*, Amend. Cross Compl., ECF No. 66. Finally, Vertiv argues that SBE should be held jointly and severally liable for any of Plaintiff's claims for which both Vertiv and SBE are found liable.  Resp., ECF No. 101.  Vertiv asserts its claims against Advanced under a theory of successor liability.  Mot., ECF No. 89.

The Court first addresses whether Advanced may be liable on any claims.

### 1.    Claims Against Advanced

Vertiv asserts claims against Advanced under a theory of successor liability.  Mot., ECF No. 89.  The facts relevant to possible successor liability are as follows:

In late October 2019, SBE began to wind down.  Sawyer Rule 30(b)(6) Dep., 12:10-13:7, ECF No. 87-4.  At the time, SBE's assets were fully encumbered by creditors: one creditor controlled SBE's inventory; another creditor controlled SBE's equipment; and a group of stockholders had a half-million-dollar lien against SBE's intellectual property ("IP").  Sawyer Indv. Dep. 18:9–19:10, ECF No. 87-3.

At the time of winding down, SBE had 72 stockholders. *Id.* at 6:13–20.

Two of SBE's former shareholders, Edward Sawyer ("Sawyer") and Dr. Michael

Brubaker ("Brubaker"), formed a new company, Advanced. *Id.* at 13:23–14:2. At

the time SBE wound down, Sawyer and Brubaker collectively owned less than

10% of SBE's stock. *Id.* at 64:24–65:19. Sawyer and Brubaker were "key

managers" at SBE and hold substantially the same positions at Advanced. *Id.* at

30:19–31:10. Sawyer and Brubaker's goal in establishing Advanced was "to be

able to get what [they] needed to keep [SBE's] technology going." Brubaker Dep.

78:2–15, ECF No. 87-8. Collectively, Sawyer and Brubaker own almost 80% of

Advanced's stock. Sawyer Indv. Dep. 63:18–64:18, ECF No. 87-3. A third

former SBE shareholder holds 1–2% of Advanced's stock. *Id.* at 65:14–24;

63:18–64:18. Advanced also had three shareholders who had not been SBE

shareholders but had worked for SBE. *Id.* at 34:6–20; 37:15–20; 63:18–64:18.

Before SBE finished winding down, Advanced negotiated a licensing

agreement for SBE's patented materials and IP. *Id.* at 14:8–14. In return, SBE

agreed "to take every possible measure and action to support existing and

potential customers of this licensed IP so as to maximize the potential value of

such IP[.]" Vertiv Exhibit J, ECF No. 89-10.

Advanced purchased SBE's former inventory and leased some of SBE's

former equipment from SBE's creditors. Sawyer Indv. Dep. 20:5–12; 26:5–23,

ECF No. 87-3. These were cash transactions. *Id.*; Sawyer Rule 30(b)(6) Dep.

20:21–21:14; 22:16–23:9, ECF No. 87-4. Advanced serves only a small subset

of SBE's former customers and has never produced the Part. Sawyer Indv. Dep. 15–20, ECF No. 87-3.

Vertiv and Advanced disagree about whether Ohio or Vermont law applies to the issue of successor liability. *E.g.*, Mot., ECF No. 92; Resp., ECF No. 102. The Court need not address the choice of law issue because, under either state's law, there is no successor liability against Advanced.

### a. Ohio Law

In Ohio, the "general rule of successor liability provides that the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation." *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993). As exceptions to that general rule, a "successor corporation may be held liable" in the following circumstances:

(1) the buyer expressly or impliedly agrees to assume such liability;

(2) the transaction amounts to a de facto consolidation or merger;

(3) the buyer corporation is merely a continuation of the seller corporation; or

(4) the transaction is entered into fraudulently for the purpose of escaping liability.

*Id.* (cleaned up).

Vertiv argues that successor liability is available under the "de facto merger" exception and the "mere continuation" exception. Resp., ECF No. 102.

### i. De Facto Merger

"A de facto merger is a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor." *Welco*, 617 N.E.2d at 1134 (citation omitted). The "hallmarks of a de facto merger" include:

> (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations.

*Id.* (citation omitted). In addition, if the selling corporation exchanges its assets for stock, that may strongly indicate a de facto merger. *Id.*

There is no de facto merger here. A few factors weigh in Vertiv's favor: Advanced retained many of SBE's corporate personnel, and SBE dissolved quickly after Advanced was formed. Finally, Advanced licensed SBE's intellectual property for only the promise "to take every possible measure" to promote the IP.

However, the remaining factors weigh against Vertiv. First, although Advanced has continued to serve a small subset of SBE's customers, it has not continued the majority of SBE's business activities. Next, there is no "continuity of shareholders resulting from a sale of assets in exchange for stock." Advanced purchased many of SBE's non-IP assets with cash and through third-party creditors. Although SBE agreed to license the IP for minimal consideration, it did

not receive any stock in Advanced in exchange for the license. In addition, there is minimal overlap between SBE's shareholders and Advanced: Brubaker and Sawyer own nearly 80% of Advanced but owned less than 10% of SBE. Finally, Vertiv points to no evidence that Advanced assumed "all liabilities and obligations ordinarily necessary to continue" SBE's operations.

On the whole, the factors weigh against a de facto merger. As a result, there is no genuine issue of material fact that the "de facto merger" exception does not apply.

### ii.      Mere continuation

A "mere continuation" theory is often described by what it is not. For example, "a corporation is not a mere continuation of the corporation whose assets it has purchased, just because it continues to provide the same services," or even if it has the "same physical plant, officers, employees, and product line as the purported predecessor." *Mickowski v. Visi-Trak Worldwide, LLC*, 415 F.3d 501, 509–10 (6th Cir. 2005) (citation omitted). Instead, mere continuation exists when "one corporation sells its assets to another corporation with the same people owning both corporations." *Welco*, 617 N.E.2d at 1134 (quotation marks and citations omitted). Because one of the goals of this type of transaction is to "escape liabilities of the predecessor corporation," "inadequacy of consideration is one of the indicia of mere continuation." *Id.* (citation omitted). However, the "key element" is "a common identity of stockholders, directors, and stock." *Mickowski*, 415 F.3d at 510 (quotation marks and citation omitted).

Many of the same facts that weigh against a de facto merger also weigh against a "mere continuation." Most importantly, there is no "common identity of stockholders, directors, and stock." As explained above, Brubaker and Sawyer own nearly 80% of Advanced's stock but owned less than 10% of SBE's. Only one other former SBE shareholder owns any Advanced stock, and he owns less than 2% of Advanced. Further, although Advanced obtained SBE's assets for a reduced price, it is not unusual for someone to buy foreclosed-on property for a lower price. Finally, Vertiv points to no evidence that the transactions between SBE and Advanced (if any) were done with a purpose of avoiding liabilities.

On the whole, then, there is no genuine issue of material fact that Advanced is not a "mere continuation" of SBE.

Accordingly, Advanced is not subject to successor liability under Ohio law.

b. **Vermont Law**

In Vermont, the general rule is that "the liabilities of a predecessor corporation will pass to the successor only when the change is occasioned by statutory merger or consolidation." *Gladstone v. Stuart Cinemas, Inc.*, 878 A.2d 214, 220 (Vt. 2005) (quotation marks and citation omitted). If the change "is accomplished by the sale of assets only, the purchasing corporation assumes no liabilities of the selling corporation" unless an exception applies. *Id.* The Supreme Court of Vermont outlines those exceptions as follows:

> (1) the buyer expressly or impliedly agrees to assume the corporation's liabilities; (2) the transaction amounts to a de facto merger or consolidation; (3) the purchasing corporation is merely a

continuation of the selling corporation; (4) the sale is a fraudulent transaction intended to avoid debts and liabilities; (5) inadequate consideration was given for the sale.

*Id.* (cleaned up).

As with the Ohio analysis, only the de facto merger and mere continuation exceptions are relevant here. Vermont law treats the de facto merger and mere continuation exceptions as "roughly equivalent." *Post v. Killington, Ltd.*, No. 5:07-CV-252, 2010 WL 3323659, at *8 (D. Vt. May 17, 2010), *aff'd*, 424 F. App'x 27 (2d Cir. 2011) The Supreme Court of Vermont has described these exceptions as follows:

> The traditional indications of "continuation" are: common officers, directors, and shareholders; and only one corporation in existence after the completion of the sale of assets. While the two foregoing factors are traditionally indications of a continuing corporation, neither is essential. In a "de facto merger" where one corporation is absorbed by another, there is continuity of the selling corporation evidenced by such things as the same management, personnel, assets, location and shareholders. Other factors such as continuation of the seller's business practices and policies and the sufficiency of consideration running to the seller corporation in light of the assets being sold may also be considered. To find that continuity exists merely because there was common management and ownership without considering other factors is to disregard the separate identities of the corporation without the necessary considerations that justify such an action. However, the question of a successor's liability is distinct from the doctrine of disregarding the corporate entity.

*Gladstone*, 878 A.2d at 222 (citation omitted).

Once again, the factors weigh against Vertiv. Although SBE and Advanced have common officers and directors, there is only minimal overlap in the shareholders. Further, although SBE no longer exists, the turning point for

SBE was not its sale of assets to Advanced, it was bankruptcy. Again, the minimal consideration for the IP license weighs in Vertiv's favor, but that does not outweigh the other factors, especially where Advanced purchased the other former SBE assets from third-party creditors.

In sum, there is no genuine issue of material fact that the Vermont de facto merger/mere continuation exception does not apply to Advanced. As a result, Advanced is not subject to successor liability under Vermont law.

Because a theory of successor liability against Advanced fails under either Ohio or Vermont law, and because the claims against advanced are pursued only under a theory of successor liability, the Court grants Advanced summary judgment on all claims against it.

### 2. Contractual Indemnity

Vertiv argues that, per the 2017 Agreement, it is entitled to indemnification from SBE for the costs Vertiv has incurred during this lawsuit. Mot., ECF No. 89.

The 2017 Agreement provides that SBE must indemnify certain buyers who buy products under the 2017 Agreement against "all losses, claims, damages, liabilities, costs and expenses, including reasonable attorneys' fees and other costs if defending any action" related to one of the following: (1) the "breach of any representation, warranty[,] or undertaking" SBE made in the 2017 Agreement; (2) the enforcement of the 2017 Agreement; and (3) the "design, development, manufacture, application, distribution, sale, use, or repair" of the

purchased product, "regardless of the legal theory upon which the claim may be based" (the "Indemnification Clause"). 2017 Agreement ¶ 9, ECF No. 66-1.

The parties spend much time arguing about whether the 2017 Agreement governs the 2016 purchase order in which Vertiv first ordered the Part. *E.g.*, Resp., ECF No. 100; Reply, ECF No. 109. However, the Court need not resolve that dispute. The 2017 Agreement provides that certain buyers—including Vertiv—may incorporate the terms of the 2017 Agreement in other orders by specifically referencing the 2017 Agreement in future orders. 2017 Agreement ¶ 1, ECF No. 66-1.

In November 2017, Vertiv placed an order (the "Order") with SBE for installation kits to put the Part in the System. Supplemental Agreement, ECF No. 89-2. There, Vertiv specifically references the terms of the 2017 Agreement. *Id.* Therefore, all the terms of the 2017 Agreement, including the Indemnification Clause, apply to the Order. 2017 Agreement ¶ 1, ECF No. 66-1.

Plaintiff's claims against Vertiv arise out of the alleged failure of the System, which allegedly failed because Vertiv installed the Part in the System. *See generally*, Amend. Compl., ECF No. 37. Therefore, Plaintiff's claims at least partially arise out of the "design, development, manufacture, application, distribution, sale, use, or repair" of the installation kits, because Vertiv used the kits to install the Part. 2017 Agreement ¶ 9, ECF No. 66-1. Moreover, the Order also references the Part as one of the items ordered. Supplemental Agreement, ECF No. 89-2. Granted, the Order notes that the Part was purchased on a

separate order.  *Id*.  Nonetheless, the inclusion of the Part of the Order

demonstrates that, at the time of the Order, the Parties intended the 2017

Agreement's terms to cover the order of the Part.

As a result, SBE has a duty to indemnify Vertiv, including by covering the

costs of this litigation.  The exact amount of this indemnification will be

determined after the resolution of Plaintiff's remaining claims against Vertiv.

### 3.    Statutory Contribution

Vertiv seeks contribution from SBE as a joint tortfeasor.  For the reasons

explained above, SBE is not liable for any of Plaintiff's claims against it.  As a

result, Vertiv has no right to any contribution from SBE or, by extension,

Advanced.  Accordingly, the Court grants summary judgment to SBE and

Advanced on the contribution "claim."

### 4.    Breach of Warranty and Breach of Contract

The breach of contract and breach of warranty claims against SBE suffers

from a serious defect: the only damages Vertiv allegedly suffered for those

claims are the effects of Plaintiff's lawsuit against Vertiv.  Amend. Cross. Compl.

at 19–20, ECF No. 66.  That is, the only damages are the costs of litigation and,

if Vertiv is found liable to Plaintiff, whatever damages award Vertiv must pay to

Plaintiff.  *Id*.  Vertiv offers no allegations or evidence that SBE's alleged breaches

harmed *Vertiv* itself.  *Id*.  In other words, the breach of contract and breach of

warranty claims are merely a repackaging of the contractual indemnification

claim.

Case No. 2:20-cv-4880                                          Page 27 of 29

Further, courts in this Circuit are generally skeptical of litigation costs being the only damages unless a contractual provision specifically provides for such costs. *See Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 530 (6th Cir. 2007) (noting that the plaintiff's "damages consist solely of its litigation costs," and explaining "that is not enough to sustain a fraud claim" under Tennessee law); *Regency Realty Grp., Inc. v. Michaels Stores, Inc.*, No. 12-10594, 2013 WL 3936399, at *13 (E.D. Mich. July 30, 2013) (explaining that, under Michigan law, attorney's fees could satisfy the element of damages in a contract claim where the contract specifically provided for attorney's fees as remedy for a breach). Here, the 2017 Agreement provides for attorney's fees and other litigation costs only as part of the Indemnification Clause, and Vertiv is attempting to recover under that provision in its indemnification claim.

Because the breach of contract claim is duplicative of the indemnity claim, SBE is entitled to summary judgment on the same.

## IV. CONCLUSION

For these reasons, Vertiv's motion for summary judgment against Plaintiff is **GRANTED IN PART** and **DENIED IN PART**; Vertiv's motion for summary judgment against SBE and Advanced is **GRANTED IN PART** and **DENIED IN PART**; SBEs' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**; and Advanced motion for summary judgment is **GRANTED**.

The only remaining claims are Plaintiff's products liability claims against Vertiv and Vertiv's claim for indemnification against SBE.

Case No. 2:20-cv-4880                                    Page 28 of 29

The Amended Complaint lacks clarity on which types of product liability claims Plaintiff asserts against Vertiv.  The Court reads the Amended Complaint as most fairly alleging a design defect and a failure to conform to representation claim.  Plaintiff is **ORDERED** to file a notice **WITHIN FOURTEEN DAYS** explaining which types of product liability claims it asserts against Vertiv.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**