UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Continental Casualty Company,

    Plaintiff,

    v.

Vertiv Services, Inc., *et al.*,

    Defendants.

Case No. 2:20-cv-4880

Judge Michael H. Watson

Magistrate Judge Shimeall

## OPINION AND ORDER

This matter is before the Court on Vertiv Services, Inc. ("Vertiv") and SBE, Inc.'s ("SBE") briefing regarding the amount of indemnification SBE owes Vertiv. ECF Nos. 143, 146, 147. The Court previously disposed of all claims in this case on summary judgment. Op. and Order, ECF No. 115; Op. and Order, ECF No. 134. In doing so, the Court concluded that SBE had a duty to defend and indemnify Vertiv. Op. and Order 25–27, ECF No. 115; Op. and Order 3–6, ECF No. 134. Now, the parties ask the Court to determine the amount subject to indemnification. ECF No. 141. Vertiv's position is that SBE owes it $434,202.17 in attorney's fees and costs. ECF Nos. 143, 147. For the following reasons, the Court agrees with Vertiv.

## I.    ANALYSIS

Having decided that SBE owes Vertiv attorney's fees and costs pursuant to SBE's contractual indemnification obligation, Op. and Order, ECF No. 115; Op. and Order, ECF No. 134, the Court now must determine whether Vertiv's

requested indemnification in the amount of $434,202.17 is reasonable.  *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

A district court has substantial discretion when determining the reasonableness of attorney's fees.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  "In determining what is reasonable, the general approach is to first determine the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate," and there is "a strong presumption that the lodestar represents the reasonable fee."  *Johnson v. Kestrel Eng'g, Inc.*, No. 2:15-CV-2575, 2016 WL 7655249, at *2 (S.D. Ohio Sept. 22, 2016) (citation modified).

### A. Billing Rates

Courts should assess the reasonableness of hourly billing rates in accordance with the "prevailing market rate in the relevant community," which is "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record."  *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (citation omitted).

According to itemized billing statements, Vertiv's lead counsel, Marc J. Kessler ("Attorney Kessler"), had an hourly rate ranging from $530 to $645 throughout this case, which has spanned over five years.  ECF Nos. 143-3, 143-4.  Several additional attorneys and paralegals supported Attorney Kessler in representing Vertiv, and their hourly rates ranged from $94.50 to $544.50.  ECF Nos. 143-3, 143-4.

SBE does not "challeng[e] the reasonableness of the rates charged," so the Court need not venture further to determine the same. *See Paschal v. Flagstar Bank*, 297 F.3d 431 (6th Cir. 2002) (affirming a fee award without scrutinizing the requested hourly rates because the defendant "did not challenge the reasonableness of [those] rates"). But, in any event, the Court finds the hourly rates reasonable in consideration of the Ohio State Bar Association's 2019 Survey on Economics of Law Practice Study ("OSBA Survey"),[1] along with Attorney Kessler's declaration. *See Equity Res., Inc. v. T2 Fin., LLC*, 2:21-cv-5922, 2025 WL 699462, at *4 (S.D. Ohio Mar. 5, 2025) ("The [OSBA Survey] provides a useful point of reference, especially when adjusted for inflation." (citation modified)); *see also Regenold v. Ohio State Bd. of Educ.*, No. 2:21-cv-1916, 2023 U.S. Dist. LEXIS 122140, at *5–6 (S.D. Ohio July 14, 2023) (applying 4% increase to the OSBA Survey's fees to adjust for inflation).

The OSBA Survey provides that, in 2019, the median hourly billing rate among general civil trial attorneys was $250, and the 95th percentile hourly rate was $610. OSBA Survey at 45. Likewise, the Court relies on the OSBA Survey's median rates for firms with more than 50 attorneys ($350), in downtown Columbus ($300), and lawyers with 26 to 35 years of experience ($250) to determine the reasonable rate. *Id.* at 44. Adjusting for inflation at four percent

---

[1]The Ohio State Bar Association, *The Economics of Law Practice in Ohio in 2019*, https://www.ohiobar.org/membership/Practice-Management-Tools-Services/economics-of-law-practice-study/ (last visited June 10, 2026).

annually from 2019 to 2026, the median rate for general civil trial attorneys is $334.72 and the 95th percentile rate is $816.73.[2]

Given the OSBA Survey and other fee awards in this District, the Court concludes that Attorney Kessler's requested hourly rates ranging from $530 to $645 are reasonable. *See The Grissoms, LLC, v. Antero Res. Corp.*, No. 2:20-CV-2028, 2026 WL 1396017, at *3 (S.D. Ohio May 19, 2026) (finding that an hourly rate of $650 is reasonable in this venue). As for the attorneys and paralegals that supported Attorney Kessler in his representation of Vertiv, the Court finds that their hourly rates ranging from $94.50 to $544.50 are reasonable for the same reasons, based on their respective years of experience and skill.

## B. Number of Hours

In establishing the number of reasonable hours, "the key requirement . . . is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (citation modified). While such documentation should identify the "general subject matter" of the work that was done, the description for each billing entry need not be "explicitly detailed." *Id.* (citations omitted). Moreover, "in assessing fees, district courts are not required to act as green-

---

[2] The OSBA Survey's median and 95th percentile adjusted rates were calculated using https://www.calculator.net/inflation-calculator.html (last visited June 10, 2026).

eyeshade accountants and achieve auditing perfection but instead must simply []
do rough justice." *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686,
703 (6th Cir. 2016) (citation modified).

Vertiv's counsel submits that they worked 1,234.5 hours in total on this
case, and that number is supported by itemized billing statements. *See* ECF
Nos. 143-3, 143-4.  SBE disputes the number of hours submitted by Vertiv's
counsel, arguing that the same improperly includes: (1) time spent on
crossclaims Vertiv asserted against Advanced Power Conversion Solutions
("Advanced"); (2) block billing entries; and (3) duplicative, vague, and erroneous
entries.  ECF No. 146 at PAGEID ## 3094–99.  The Court considers each
argument in turn.

### 1. Crossclaims Against Advanced

SBE first argues that Vertiv's fee submission must be reduced because it
includes time "spent on the pursuit of an offensive claim against a third party that
this Court has ruled is not related to SBE as a matter of law."  ECF No. 146 at
PAGEID # 3095.  Specifically, SBE contends that its indemnification obligation is
controlled by its agreement with Vertiv, and that agreement does not contemplate
indemnification for offensive claims.  *Id.* at PAGEID ## 3094–95.

True, fees awarded pursuant to a contractual indemnification claim in Ohio
are controlled by the language of the contract. *Worth v. Aetna Cas. & Sur. Co.*,
513 N.E.2d 253, 256 (Ohio 1987) ("The nature of an indemnity relationship is

determined by the intent of the parties as expressed by the language used."

(citation omitted)).  And the indemnification agreement at issue here provides:

> Seller shall indemnity, defend and hold harmless the applicable Buyer(s) and its/their respective successors and assigns from and against any and all losses, claims, damages, liabilities, costs and expenses, including reasonable attorneys' fees and other costs of defending any actions, sustained or incurred by a Buyer in connection with (i) the breach of any representation, warranty or undertaking made by Seller in this Master Agreement, (ii) the enforcement of this Master Agreement, and (iii) the design, development, manufacture, application, distribution, sale, use, or repair of the Products, regardless of the legal theory upon which the claim may be based, including but not limited to allegations of intellectual property infringement, except to the extent caused by the sole negligence of Buyer.

ECF No. 89-1 at PAGEID # 1682.  But SBE fails to elaborate as to why the

agreement doesn't cover the unsuccessful crossclaims against Advanced and

further fails to cite any case law suggesting the same.  *See generally* ECF No.

146.

Vertiv asserted crossclaims against Advanced for contractual

indemnification, statutory contribution, and breach of contract under a successor-

in-interest theory of liability.  ECF No. 66 at PAGEID ## 877–80.  Though these

claims are technically affirmative, offensive claims, a closer examination of them

reveals that they are "defensive in nature," as they were aimed at shifting Vertiv's

liability onto Advanced.  *See Oscar W. Larson Co. v. United Capitol Ins. Co.*, 845

F. Supp. 458, 461 (W.D. Mich. 1993), *aff'd*, 64 F.3d 1010 (6th Cir. 1995).  And

the Sixth Circuit has found that such affirmative claims are subject to

indemnification.[3]  *Id.*; *see also Perry Drug Stores v. NP Holding Corp.*, 243 F. App'x 989, 997 (6th Cir. 2007).

In *Perry*, the parties had an indemnification agreement that was identical in all relevant respects to the agreement at issue here.  *Id.*  After the district court awarded attorney's fees pursuant to the agreement, the non-prevailing party challenged the award, arguing that the agreement should not cover fees for affirmative claims that were asserted by the prevailing party.  *Id.*  The Sixth Circuit disagreed, explaining that the use of the term "all" in an indemnification agreement should be "interpreted to provide for the broadest possible indemnification."  *Id.*  Under that broad interpretation, the Sixth Circuit determined that the district court did not err in its fee award that included fees for the affirmative claims because those claims resulted from the prevailing party's defense against third-party claims subject to indemnification.  *Id.*

---

[3] This approach is consistent with other courts that have addressed the issue.  *See, e.g.*, *Hartford Fire Ins. Co. v. Vita Craft Corp.*, 911 F. Supp. 2d 1164 (D. Kan. 2012) ("A duty to defend would be nothing but a form of words if it did not encompass all litigation by the insured which could defeat its liability, including claims and actions for contribution and indemnification." (citation modified)); *Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co.*, 229 F. Supp. 2d 284, 289 (S.D.N.Y. 2002) (citation omitted) (finding that counterclaims were subject to indemnification where they were "inextricably intertwined with the defense of [defendant's] claims and necessary to the defense of the litigation as a strategic matter"); *Great W. Cas. Co. v. Marathon Oil Co.*, 315 F. Supp. 2d 879, 882 (N.D. Ill. 2003) (holding that the contractual duty to defend covers "fees and costs incurred in counterclaims or third-party actions aimed at shifting liability for the claim as to which the duty to defend exists"); *D.R. Horton, Inc. v. Mountain States Mut. Cas. Co.*, 69 F. Supp. 3d 1179, 1200 (D. Colo. 2014) ("[I]f [defendant] owes [plaintiff] a defense, and if [plaintiff's] pursuit of third-party claims against the subcontractors was a reasonable defense strategy . . . then those costs are part of the defense costs.").

In *Oscar W. Larson Co.*, the district court awarded attorney's fees to the plaintiff that included fees "for prosecuting counterclaims and cross-claims for affirmative relief" pursuant to a contractual indemnification claim because the affirmative claims were "actually defensive in nature and prosecuted to limit or defeat plaintiff's liability." 845 F. Supp. at 461.  The court explained that the indemnity clause, similar to the one in this case, covered such fees because they were "expenses which [were] reasonable and necessary to limit or defeat liability." *Id.*  The Sixth Circuit affirmed the award.  *Oscar W. Larson Co.*, 64 F.3d 1010.

Vertiv's crossclaims against Advanced are covered by the indemnification agreement here for the same reasons set forth in *Perry* and *Oscar W. Larson Co.*  The crossclaims were prosecuted to limit or defeat Vertiv's liability to Continental Casualty Company ("Continental") by attempting to shift that liability onto Advanced.  *See* ECF No. 66 at PAGEID ## 877–80.  As such, the claims were "defensive in nature."  *See Oscar W. Larson Co.*, 845 F. Supp. at 461.  In applying a broad interpretation to the indemnification agreement, which extends to "any and all" expenses incurred by Vertiv in connection with the type of action that Continental initiated here, the Court finds that the agreement encompasses the crossclaims.  So, the Court is not persuaded that Vertiv's fee submission should be reduced on this ground.

## 2. Block Billing Entries

SBE next argues that the Court should not accept Vertiv's fee submission because it includes "block billing worthy of reduction." ECF No. 146 at PAGEID # 3096. In support of its argument, SBE points to a single billing entry—out of several hundred—that Vertiv's counsel submitted for "drafting notices of deposition of SBE, Advanced Conversion, and Markley." *Id.* (citing ECF No. 143-3 at PAGEID # 2918 (citation modified)).

Though grouping together multiple tasks is viewed unfavorably, the Court is not persuaded by this sole entry that Vertiv's counsel engaged in the type of "cookie cutter block billing" that warrants a reduction of the fee award. *See Preferred Wireless LLC v. T-Mobile USA, Inc.*, No. 2:22-cv-978, 2025 WL 1311272, at *6 (S.D. Ohio May 6, 2025). And, as SBE acknowledges, this Court is not required to do a "line-by-line review" of the billing entries submitted. ECF No. 146 at PAGEID # 3098 (citing *Veteran Med. Prods., Inc. v. Bionix Dev. Corp.*, No. 1:05-cv-655, 2010 WL 989804, at *3 (W.D. Mich. Mar. 16, 2010)). Accordingly, SBE's argument for a reduction on this basis is unavailing.

## 3. Duplicative, Vague, and Erroneous Entries

Last, SBE argues that Vertiv's submission is "replete with duplicative, vague, excessive, and unnecessary entries." ECF No. 146 at PAGEID # 3097. But SBE only points to three billing entries—again, out of several hundred—that it claims warrant a fee reduction for this reason. *Id.* at PAGEID ## 3097–98.

As explained, the Court is "not required to do a line-by-line analysis" of Vertiv's billing entries, *Veteran*, 2010 WL 989804, at \*3, nor is it "required to act as green-eyeshade accountants and achieve auditing perfection," *The Ne. Ohio Coal. for the Homeless*, 831 F.3d at 703 (citation modified).  Instead, the Court "must simply [] do rough justice," *id.*, and may find Vertiv's time submission reasonable where the billing entries as a whole are "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation," *Richard v. Caliber Home Loans, Inc.*, 832 F. App'x 940, 947 (6th Cir. 2020) (citation modified).  Such is the case here, *see* ECF Nos. 143-3, 143-4, and the Court will not reduce Vertiv's fee award based on three billing entries—cherry-picked out of hundreds of detailed entries spanning over five years—that could have been more clearly submitted.

### 4. Cumulative Assessment

In consideration of the above analysis, the Court is satisfied that the documentation submitted by Vertiv adequately reflects the reasonable number of hours expended by its counsel in connection with its defense of this case.  *See Imwalle*, 515 F.3d at 553.  The Court thus finds that the number of reasonable hours is 1,234.5 hours for purposes of determining the lodestar amount.

### C. Lodestar Calculation

With 1,234.5 reasonable hours subject to indemnification, multiplied by the reasonable billing rates ranging from $94.50 to $645 that apply to those hours,

the lodestar amount here is $402,593.95. And for the reasons set forth above, SBE has failed to overcome the "strong presumption that the lodestar represents the reasonable fee." *Johnson*, 2016 WL 7655249, at *2. Therefore, the Court **ORDERS** SBE to pay Vertiv $402,593.95 in attorney's fees pursuant to its contractual indemnification obligation.[4]

### D. Litigation Costs

In addition to attorney's fees, Vertiv submits that it is entitled to litigation costs in the amount of $31,608.22. ECF No. 143 at PAGEID ## 2815–16. The indemnification agreement indeed covers litigation costs, *see* ECF No. 89-1 at PAGEID # 1682, and SBE does not contest Vertiv's request for the same, *see generally* ECF No. 146.

Documentation submitted by Vertiv indicates that these costs were incurred for, *inter alia*, court fees, legal research, discovery, and document hosting. *See* Kessler Decl., ECF No. 143-1; ECF No. 143-3; ECF No. 143-4. As such, the Court finds that these costs are reasonable, were necessary to litigate this case, and are subject to the indemnification agreement. *See The Grissoms*, 2026 WL 1396017, at *4. The Court **ORDERS** SBE to pay Vertiv $31,608.22 in costs.

---

[4] No hearing is necessary here because the Court was able to resolve the fee dispute based on the documentation submitted by the parties with their briefs. *Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir. 1995) ("A hearing is required only where the district court cannot fairly decide disputed questions of fact on the basis of affidavits and other documentation." (citation omitted)).

## II.    CONCLUSION

For these reasons, SBE is **ORDERED** to pay Vertiv $434,202.17 in attorney's fees and costs.  The Clerk is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**